[Cite as *State v. Douglass*, 2020-Ohio-1214.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
|     Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2019 CA 00056 |
| PATRICK DOUGLASS | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No. 2018 CR 823


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      March 27, 2020


APPEARANCES:

For Plaintiff-Appellee                           For Defendant-Appellant

WILLIAM C. HAYES                          PETER SCRANTON
PROSECUTING ATTORNEY             6253 Riverside Drive
JENNY GONZALEZ-WELLS             Suite 200
ASSISTANT PROSECUTOR             Dublin, Ohio 43017
20 South Second Street, Fourth Floor
Newark, Ohio 43055

*Wise, John, P. J.*

{¶1} Defendant-Appellant Patrick Douglass appeals his three-count drug trafficking conviction in the Court of Common Pleas, Licking County. Plaintiff-Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On November 5, 2018, officers attached to the CODE (Central Ohio Drug Enforcement) Task Force conducted a controlled drug buy using a confidential informant ("CI"), with Appellant Douglass being the target of the investigation. The CI and appellant, who lived out of state, had met via Facebook and had previously "[done] business together." Tr. at 146. On this occasion, the two exchanged text messages and arranged a sale by appellant of two pounds of psilocin and ten pounds of marijuana, to take place in person at a hotel on North Second Street in Newark, Ohio.[1]

{¶3} The CI proceeded to the hotel wearing a police wire and recording device, carrying with him $2,800.00 in buy money provided by law enforcement. The transaction between the CI and appellant was completed, and appellant headed back to his automobile. However, before he got there, Detective Adam Hoskinson stopped him and took him into custody.

{¶4} On November 15, 2018, the Licking County Grand Jury indicted appellant on one count of aggravated trafficking in drugs (psilocyn, (R.C. 2925.03(A)(1)/(C)(1)(d)), a felony of the second degree; one count of trafficking in drugs (R.C. 2925.03(A)(2)/(C)(3)(d)), a felony of the third degree; and one count of trafficking in drugs (R.C. 2925.03(A)(1)/(C)(3)(c)), a felony of the fourth degree.

---

[1] "Psilocin is the metabolite of psilocybin, which is the active ingredient in hallucinogenic mushrooms." *State v. Hotz,* 795 N.W.2d 645, 649 (Neb.2011). *See, also, State v. Fox,* 12th Dist. Fayette No. CA2008-03-009, 2009-Ohio-556, ¶ 3.

{¶5} The case proceeded to a jury trial on June 25, 2019. The jury found appellant guilty of all three counts, with special findings as to weight on each count. Tr. at 284-285. Sentencing was deferred and on July 17, 2019, the trial court sentenced appellant to a mandatory minimum two-year term of incarceration pursuant to statute. Sentencing Tr. at 5. The court granted a stay of the sentence so that appellant could appeal. Tr. at 8-9.

{¶6} Appellant filed a notice of appeal on August 31, 2019. He herein raises the following two Assignments of Error:

{¶7} "I. WEIGHT OF THE EVIDENCE.

{¶8} "II. SUFFICENTCY [SIC] OF THE EVIDENCE."

{¶9} We will address the aforesaid assigned errors in reverse order.

II.

{¶10} In his Second Assignment of Error, appellant contends his conviction was not supported by sufficient evidence. We disagree.

### Sufficiency Standard of Review

{¶11} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, 2010 WL 27862, ¶ 11. The focus of a "sufficiency" analysis is solely upon the State's

evidence; *i.e.*, the appellate court must decide if the State offered evidence on each statutory element of the offense. *State v. Cross-Necas*, 11th Dist. Portage No. 2010-P-0042, 2011-Ohio-2590, ¶ 32 (internal quotations and additional citations omitted). Also, "[a]s trial courts often note, proof beyond a reasonable doubt does not mean proof beyond any doubt." *State v. Burgess,* 11th Dist. No. 2002–L–019, 2004–Ohio–3338, ¶ 37.

*Sufficiency re: Recorded Buy Money*

**{¶12}** Appellant first claims the evidence shows a "misappropriation of the buy money." Appellant's Brief at 6. He claims Detective Kyle Boerstler, who *inter alia* provided surveillance outside of the hotel and subsequently assisted with the inventory search of appellant's vehicle, acknowledged on cross-examination that the buy money was mistakenly deposited in a bank. However, the record clearly shows Boerstler merely stated he was aware that "some of the buy money" had been deposited. *See* Tr. at 119.

**{¶13}** Appellant also directs us to Detective Todd Green's admission that there had been a mistake as to the physical quantity of the buy money. *See* Tr. at 215. But our review of the pertinent testimony indicates that Green readily admitted that another officer had deposited some of the money in a designated law enforcement bank account. *Id.* Thus, instead of the $2,800.00 in buy money, Green was left with $1,500.00 that had been seized from appellant's person. Tr. at 217.

**{¶14}** We find any discrepancies on this point were adequately explained to the jury by the prosecution witnesses, and we find no merit in appellant's contention that the alleged mishandling of the buy money supports a claim of insufficiency of the evidence.

### Sufficiency re: Drug Quantities

**{¶15}** Appellant secondly challenges the State's handling and weight measurements of the drugs seized in the controlled buy, particularly the psilocin mushrooms.[2]

**{¶16}** Appellant first appears to fault Detective Boerstler for not ensuring that a law enforcement officer weighed the drug evidence both before and after it went to the crime lab, even though the jury heard testimony from BCI analyst Beth Underwood, who testified that she weighed the drugs in accordance with BCI policy. We note Underwood also went over BCI's procedures for ensuring that its instruments were working properly, including weekly checks of the scales using calibrated weights. Tr. at 158. Underwood further described her protocols in removing the substances from the evidence bags (using the Laboratory Information Management System), which is followed by presumptive and confirmatory testing, in addition to weighing. *See* Tr. at 157, 172-173. Underwood also testified that she removes any substances that are not mushroom material or vegetation, although she indicated stems and leaves are typically not removed if they are in the bag. Tr. at 173-175. In this instance, she found nothing of that nature that needed to be removed prior to weighing the evidence. *Id.* Underwood explained that she utilizes a "representative sampling," pursuant to BCI policy, in the testing step. This is done after determining that the material looks the same. Tr. at 178-180.  She also indicated that her lab does not do quantitative analysis; thus, analysts are not able to say how much psilocyn is in a given mushroom sample. Tr. at 175-176. Ultimately, she found the substances

---

[2]   We observe that some authorities utilize the spelling "psilocin" rather than "psilocyn." *Ex parte Vetcher,* Tex.App.No. 05-18-00224-CR, 2018 WL 4103211, (Aug. 29, 2018) (unpublished).

submitted were psilocyn (457.94 grams) and marijuana (903.2 grams and 4997.1 grams), within a reasonable degree of scientific certainty. *See* Tr. at 161-168.

{¶17} Appellant next questions whether the State proved the precise weight of the psilocin at issue. We note psilocyn is set forth under R.C. 3719.41(C)(26) as a Schedule I hallucinogenic drug. R.C. 3719.41(C) provides the preceding heading as follows: "Any *material*, compound, mixture, or preparation that contains any quantity of the following hallucinogenic substances, including their salts, isomers, and salts of isomers, unless specifically excepted under federal drug abuse control laws, whenever the existence of these salts, isomers, and salts of isomers is possible within the specific chemical designation. ***." (Emphasis added).

{¶18} In addition, we reiterate that appellant was charged under R.C. 2905.03(C)(1)(d), *i.e.*, an allegation that "the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount." Under R.C. 2925.01(D), the definition of bulk amount" for Schedule I controlled substances includes the language "any compound, mixture, preparation or substance ***."[3]

{¶19} Finally, although in the realm of cocaine cases, the Supreme Court of Ohio has held as follows: "Giving effect to the statute as a whole and to the intent of the legislature as expressed in the words of the statute, we conclude that the applicable offense level for cocaine possession under R.C. 2925.11(C)(4) is determined by the total weight of the drug involved, including any fillers that are part of the usable drug." *State v.*

---

[3] 2925.03(C)(3) also contains "compound, mixture, preparation, or substance" language regarding marijuana trafficking.

*Gonzales,* —— Ohio St.3d ——, 2017–Ohio–777, —— N.E.3d —— (*"Gonzales II"*); *State v. Davidson*, 5th Dist. Muskingum No. CT2017-0014, 2017-Ohio-1505, ¶ 13.

**{¶20}** We find no reason why the *Gonzales* rationale should not extend to substances such as psilocyn and marijuana. In sum, we conclude Ohio law does not require in the present context that the entire contraband substance be tested or that there must be a quantitative analysis done to prove chemical purity.

### *Conclusion*

**{¶21}** Accordingly, upon viewing the evidence in this matter in a light most favorable to the prosecution, we hold rational triers of fact could have found the essential elements of the trafficking offenses at issue proven beyond a reasonable doubt.

**{¶22}** Appellant's Second Assignment of Error is therefore overruled.

I.

**{¶23}** In his First Assignment of Error, appellant contends his conviction was against the manifest weight of the evidence. We disagree.

**{¶24}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also, State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶25}** In the case *sub judice*, appellant's focus in his manifest weight claim is the chain of evidence pertaining to the seized drugs. In demonstrating a chain of custody, "[t]he proponent of the evidence need not offer conclusive evidence as a foundation but must offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *State v. Harold*, 11th Dist. Portage No. 2014–P–0012, 2015–Ohio–954, 2015 WL 1142946, ¶ 37, citing *State v. Ewing*, 9th Dist. Lorain No. 97CA006944, 1999 WL 241610; *State v. Jones*, 5th Dist. Richland No. 2016 CA 0045, 2017-Ohio-8633, ¶¶ 31-32.

**{¶26}** In a nutshell, appellant notes that Detective Boerstler was unspecific as to who collected the evidence; he recalled only that it was "other detectives." Tr. at 115. Boerstler also could not recall who the evidence was delivered to at BCI. Tr. at 118. Appellant also emphasizes that although Boerstler mentioned Detective Hoskinson's name as possibly one of the other detectives, Hoskinson himself later testified that he did not collect any evidence in this case. *See* Tr. at 196. Later, BCI analyst Beth Underwood did testify that an individual named Chuck Wadley brought the evidence to the lab; however, Underwood conceded she did not know Wadley personally. Tr. at 168-169. Appellant finally points out that the evidence then went to Jenny Brubaker and Madeline Sigrist, neither of whom testified at trial.

**{¶27}** However, a review of the record reveals Detective Green testified he collected the purchased drugs from the hotel room and gave them to Detective Boerstler. Tr. at 222. Detective Green further testified that everyone who transports evidence is either an employee of the Sheriff's department or part of CODE. Tr. at 213-214. Furthermore, Detective Boerstler recalled that he located the eleven bags of marijuana in

a "pelican case" in the appellant's rental car. Tr. at 104-105. Boerstler also testified that the items were placed in an evidence box and sealed. Tr. p.106. Boerstler and Underwood (the aforementioned BCI analyst) both testified as to the sealing and initialing protocols, as well as the numbers and bar codes used to ensure proper identification of the evidence. Tr. at 106-107, 159-162. Boerstler testified that the items were entered into evidence and the property submission sheet was sent to BCI. Evidence was also presented that all officials who take possession of any evidence have to sign it out and then back in after testing. Tr. at 213-214. Furthermore, evidence was adduced that the property clerk for the Sheriff's Office transported the property to BCI where it was collected by BCI employees and then assigned to the analyst for testing. Tr. at 153-154. The various property records and evidence submission forms establishing a chain of custody were admitted into evidence by the State at trial.

{¶28} Upon review, we find any issues with the chain of custody would have only impacted the weight of the drug evidence, not its admissibility. *Cf. State v. Semedo,* 5th Dist. Stark No. 2006 CA 00108, 2007–Ohio–1805, ¶ 12; *State v. Jones*, 5th Dist. Richland No. 2016 CA 0045, 2017-Ohio-8633, ¶ 35. Furthermore, even if demonstrated, a substandard police investigation generally "has no bearing on the question of the manifest weight of the evidence," so long as the evidence that is presented is sufficient to sustain the verdict. *See State v. Keyser*, 11th Dist. Portage No. 95-P-0136, 1996 WL 635842. Having reviewed the record under the standard of *Martin*, we find no demonstration that appellant's convictions must be reversed and a new trial ordered.

**{¶29}**   Appellant's First Assignment of Error is therefore overruled.

**{¶30}**   For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Licking County, is hereby affirmed.

By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.

JWW/d 0317